UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LAUREL SMITH,** )<br>)<br>        **Plaintiff,** )<br>)<br>      **v.** )<br>)<br>**JO ANNE B. BARNHART,** )<br>**Commissioner of the** )<br>**Social Security Administration,** )<br>)<br>        **Defendant.** )<br>_____ ) | NO. CV 04-08207-MAN<br><br>MEMORANDUM OPINION<br><br>AND ORDER |

Plaintiff filed a Complaint on October 6, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of an award of disability insurance benefits ("DIB") and supplemental security income ("SSI"). On November 9, 2004, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on June 10, 2005, in which: Plaintiff seeks an order reversing the decision denying benefits and directing the payment of benefits or, alternatively, remanding the case for further proceedings; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed her application for SSI on June 7, 2001, and her application for DIB on June 25, 2001. (Administrative Record ("A.R.") 59-61, 156-68.) Plaintiff claims to have been disabled since January 1, 1995, due to arrhythmia, gastrointestinal reflux disease ("GERD"), hypertension, and depression. (Joint Stip. at 2.) She has past relevant work experience as a paralegal. (A.R. 17, 77.)

The Commissioner denied Plaintiff's claims initially and upon reconsideration. On November 13, 2002, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Eric V. Benham ("ALJ"). (A.R. 181-207.) However, the ALJ continued the case to obtain a psychiatric evaluation of Plaintiff. (A.R. 205-06.) On August 13, 2003, the ALJ held a supplemental hearing. (A.R. 208-38.) On August 27, 2003, the ALJ denied Plaintiff's claims, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (A.R. 5-7, 23.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his August 27, 2003 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability on January 1, 1995. (A.R. 17, 21.) The ALJ found that Plaintiff has "more than a high school education" and Plaintiff was "a 'younger individual between the ages of 45 and 49' until she attained age 50 on February 4, 2001 and became an 'individual closely approaching advanced age.'" (A.R. 22.) The ALJ further found

that Plaintiff's hypertension and depression constitute "severe" impairments within the meaning of the Regulations, 20 C.F.R. §§ 404.1520(b) and 416.920(b), but her purported arrhythmia and GERD are not severe. (A.R. 17-18, 21.) The ALJ also concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed in Appendix 1, Subpart P, Regulation No. 4. (A.R. 22.)

The ALJ further found that Plaintiff's testimony regarding her impairments was not fully credible (A.R. 19-20, 22), and assessed her residual functional capacity as follows:

> [Plaintiff has] the capacity to perform light work that would allow for moderate limitations in the ability to understand, remember and carry out complex job instructions, moderate limitations in the ability to relate [to] and interact with the public, supervisors and coworker[s] and moderate limitations in the ability to maintain attention and concentration for complex and varied work.[1]

(A.R. 22.) The ALJ further found that Plaintiff cannot perform her past relevant work and has no transferrable skills. (A.R. 20, 22.) Using Medical-Vocational Rules 202.21 and 202.14 as a framework and relying upon the testimony provided by the vocational expert, the ALJ found that Plaintiff could perform a significant number of jobs in the national

---

[1] "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 416.967(b), 404.1567(b).

economy, such as packager, assembler, and sorter. (A.R. 21-22.)

Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act.  (A.R. 22.)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y. of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more

than one rational interpretation of the evidence. *Id*. at 1041; *see also* Morgan v. Commiss'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Sec'y., 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges one issue:  Plaintiff contends that the ALJ improperly rejected the opinion of her examining doctor regarding her mental limitations.  (Joint Stip. at 3.)

**A.   The ALJ Erred In Rejecting Dr. Granzow's Opinion.**

Ordinarily, an examining physician's opinion should be given greater weight than a non-examining physician's opinion. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996)(citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)).  When the ALJ rejects the opinion of an examining physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record.  *Id.* at 830-31.

A conflicting opinion of a non-examining doctor "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831 (quoting Pitzer, *supra*).  However, a non-examining physician's opinion may "constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.2d 1144, 1150 (9th Cir. 2001)(citing Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989)).  Thus, an ALJ

may adopt the opinion of a non-examining physician, instead of an examining doctor's opinion, if the ALJ gives specific and legitimate reasons for doing so, that are supported by substantial evidence in the record. Lester, 81 F.3d at 831 (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)); *see* Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984)("[T]o the extent that [the nontreating physician's] opinion rests on objective clinical tests, it must be viewed as substantial evidence that [the claimant] is no longer disabled.")). Furthermore, the ALJ may reject an examining physician's opinion if that opinion is conclusory, brief, and unsupported by clinical findings. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

At the initial hearing before the ALJ, both Plaintiff's counsel and the ALJ agreed that further proceedings in the case should await an examination of Plaintiff regarding a possible mental impairment. (A.R. 205-06.) On February 3, 2003, O. Joachim Granzow, M.D., conducted a psychiatric examination of Plaintiff. (A.R. 147-49.)

In rejecting Dr. Granzow's opinion and deferring to a non-examining doctor's opinion, the ALJ explained:

> Dr. Granzow diagnosed [Plaintiff] with "[a]djustment disorder, chronic with mixed anxiety and depressed mood, apparently on the basis of physical problems" (Ex. 5F/3). He opined that [Plaintiff] was able to perform simple tasks on only an unsteady part time basis. Dr. Granzow further opined that [Plaintiff's] mental condition would improve only if her physical condition improved. I question this conclusion

6

> because [Plaintiff's] only "physical condition" is hypertension that could be controlled with medication compliance.
>
> Dr. Granzow's conclusion that [Plaintiff] could perform only part time work was not consistent with his own examination and the record as a whole. Therefore, the undersigned obtained the testimony of a psychiatric medical examiner. [Plaintiff] objected to the use of a medical expert and argued that the undersigned should accept Dr. Granzow's conclusion despite the lack of any history of psychiatric impairment. The objection was overruled. The medical expert, Dr. Agler, testified that there was not enough information in the file to reach a definitive diagnosis. However, he suspects that [Plaintiff] has an undifferentiated somatoform disorder and a dysthymic disorder. He noted the claimant's poor credibility [and] stated that she exaggerates wildly.

(A.R. 19.)

Plaintiff contends that the ALJ erred in finding that Dr. Granzow's opinion should be rejected as inconsistent with his own examination findings and with the record as a whole, because the ALJ failed to "point to any specific inconsistencies" supporting his conclusion. (Joint Stip. at 6.) Plaintiff reasons that, therefore, the ALJ failed to provide a specific and legitimate reason for rejecting Dr. Granzow's opinion. (Id.) Plaintiff further contends that, because Dr. Granzow's opinion was not properly rejected and should have been credited as a

matter of law, the ALJ improperly relied upon a non-examining doctor's opinion, *i.e.*, that of the medical expert, which was not substantial evidence. (*Id.*)

The ALJ stated two grounds for rejecting Dr. Granzow's report: (1) that the psychiatrist's opinion that Plaintiff's mental condition would improve only if her physical condition improved was questionable, because the ALJ found that her only physical condition was hypertension; and (2) the psychiatrist's opinion that Plaintiff had the residual functional capacity to perform only part-time work was not consistent with his examination findings and other evidence of record. Neither ground, however, is specific and legitimate.

The ALJ's first ground is not legitimate, because Dr. Granzow was provided with medical evidence -- namely the report of Dr. Byron W. Briscoe, a consulting physician who conducted a physical examination of Plaintiff on August 19, 2001 -- indicating that Plaintiff had several physical problems. (A.R. 129-34, 147.) Dr. Briscoe's diagnostic impression of Plaintiff was: "1. Atypical chest pain, fibromyositis[;] 2. Hypertensive vascular disease, moderately severe, uncontrolled[;] 3. History of palpitations without documentation of any cardiac arrhythmia[;] 4. Chronic anxiety depressive reaction[;] 5. Gastroesophageal reflux disease[;] and 6. Exogenous obesity." (A.R. 133.) Using this report and his own psychiatric examination of Plaintiff, Dr. Granzow diagnosed Plaintiff with "[a]djustment disorder, chronic, with mixed anxiety and depressed mood (309.28), apparently on the basis of physical problems" and opined that, "[i]n my opinion, [Plaintiff] has sufficient capacity for understanding and memory but is

limited in sustained concentration and persistence and social interaction and adaptation, but from the psychiatric point of view, she appears able to do light housework and to perform simple tasks on an unsteady, part-time basis." (A.R. 149.)

Pursuant to the regulations, the Commissioner gives consultative examiners, such as Dr. Granzow, background medical records to aid in examining the claimant. *See* 20 C.F.R. 404.1517 ("[i]f we arrange for [a consultative] examination or test, . . . [w]e will also give the examiner any necessary background information about your condition"). There is no evidence of record that, in providing Dr. Granzow with Dr. Briscoe's opinion, the Commissioner provided Dr. Granzow with any reason not to rely on its substance. There is no indication that Dr. Granzow was provided other, conflicting medical records as to Plaintiff's physical problems. Although Dr. Granzow's report is unclear as to the precise physical problem(s) he ties to Plaintiff's mental impairments, it is clear that he had a substantial evidentiary basis for believing her to have multiple physical problems based on Dr. Briscoe's report. Thus, for the ALJ to question Dr. Granzow's opinion based on the ALJ's own subsequent conclusion that Plaintiff's *only* condition is hypertension is disingenuous and not legitimate.[2] *See* <u>Reddick v. Chater</u>, 157 F.3d 715, 723 (9th Cir. 1998)(stating that it is impermissible for

---

[2] While Plaintiff has not challenged the ALJ's findings that her only severe physical condition is hypertension, the Court notes that both of the testifying medical experts retained by the Commissioner opined that Plaintiff has other physical impairments. At the initial hearing, Dr. Armon Toomajian testified that Plaintiff's severe impairments are hypertension, GERD, and atypical chest pain. (A.R. 187.) At the supplemental hearing Dr. Charles F. Agler testifed that Plaintiff has hypertension, is obese, and may or may not have GERD and/or chest pain and palpitations. (A.R. 215.)

the ALJ to develop an evidentiary basis by "not fully accounting for the context of material or all parts of the testimony and reports").

It appears that the ALJ may have been concerned that Dr. Granzow's diagnosis was unduly influenced by Plaintiff's tendency to "wildly" exaggerate[3] her limitations. (A.R. 17, 216.) However, Dr. Granzow appears to have been cognizant of Plaintiff's lack of credibility, noting, for example, that despite Plaintiff's claims of a poor appetite, she had gained nearly 100 pounds over a 10 year period. (A.R. 148.) Instead of lightly disregarding Dr. Granzow's opinion based on this apparent concern, the ALJ should have re-contacted the psychiatrist to clarify any inadequacies or ambiguities in his diagnosis in this respect. *See* 20 C.F.R. S 404.1512(e) (requiring the ALJ, if feasible, to seek additional evidence or clarification from the physician when the information from the physician regarding a claimant's condition is inadequate to render a determination regarding disability).

With respect to the ALJ's second ground for rejecting Dr. Granzow's opinion, namely, the purported inconsistencies within Dr. Granzow's

---

[3]   Although the ALJ's finding that Plaintiff's credibility is poor was not raised as an issue in this case, the Court notes that the ALJ determined that Plaintiff was not credible for some of the following reasons: (1) "[Plaintiff] alleged that she vomited a cup to a cup and a half of fluid due to gastrointestinal reflux disease . . . [which] Dr. Agler noted . . . was far in excess of what would be expected from gastrointestinal disease" (A.R. 19); (2) [Plaintiff] testified that she did not take her anti-hypertensive medication because it makes her sleep for "four to five days. She also claimed to have had several heart attacks although there is no evidence to support this assertion" (*Id.*); (3) "[Plaintiff] alleges disability due to cardiac arrhythmias, but has provided no medical evidence to support this allegation" (A.R. 20); and (4) "[Plaintiff] maintains that she is anorexic and has gastrointestinal reflux disease which causes vomiting, but she has gained nearly 100 pounds over the past 10 years" (*Id.*)

opinion and between Dr. Granzow's opinion and the record as a whole –– the ALJ erred. The ALJ failed to identify any specific inconsistencies within Dr. Granzow's opinion, and therefore, it is unclear where the inconsistencies, if any, lie. As to purported conflicts with the record, as noted by the ALJ, prior to Dr. Granzow's examination, Plaintiff had received no other psychiatric examination. (A.R. 19, 214.) Therefore, although there was medical evidence of record as to Plaintiff's physical limitations,[4] there were no determinations about Plaintiff's mental health limitations prior to Dr. Granzow's psychiatric examination. Thus, it is unclear how Dr. Granzow's opinion can conflict with a record that did not exist before he rendered his opinion.

It may be that the ALJ based his statement on purported inconsistencies between Dr. Granzow's and Dr. Agler's opinions. Following Dr. Granzow's diagnosis, Dr. Agler, the non-examining psychiatrist who served as a medical expert at the supplemental hearing, testified that he suspected Plaintiff had a somatoform disorder or a dysthymic disorder. Dr. Agler further testified that: "my inclination is that [Plaintiff] might be able to handle some low demand job at least six hours a day, maybe eight. But I think some of that would be in a

---

[4] The ALJ noted that "Dr. Briscoe estimated that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 2 hours of an 8 hour day, sit for 1 hour at a time and stand for 1 hour at a time and is limited in her ability to use her left hand to push/pull arm controls (Ex. 3F/5). He opined that her blood pressure 'should be brought under control with appropriate medication' (Ex. 3F/5). Dr. Briscoe later told a State Agency physician that the claimant would be able to stand and walk for 6 hours of an 8 hour workday if her blood pressure was medically controlled (Ex. 4F/12). Dr. Toomajian, the medical expert, also testified that the claimant retained the residual capacity to perform light work, but could not perform work climbing ladders or scaffolds, or work at heights." (A.R. 18.)

rehab counsel[ing] [INAUDIBLE]."  (A.R. 217.)  However, Dr. Agler's statement was highly qualified, and cannot fairly be read as an opinion regarding Plaintiff's ability to work.  Dr. Agler's testimony, read in context, reflected his view that neither he nor Dr. Granzow had sufficient information available to render an adequately-informed opinion regarding Plaintiff's limitations and ability to work, and further testing was needed.  (A.R. 217-20.)[5]  In view of the tentative, equivocal, and qualified, at best, nature of Dr. Agler's testimony, it was not appropriate to conclude that Dr. Granzow's opinion was inconsistent with  Dr. Agler's hearing testimony -- if, in fact, that actually was the basis for the ALJ's finding that Dr. Granzow's opinion was inconsistent  with the record as a whole.  Given the ALJ's failure to specify the basis for his finding, the Court cannot determine if it was legitimate; however, the Court can and does find that it was not specific.

For the foregoing reasons, the ALJ's stated bases for rejecting Dr. Granzow's opinion were not legitimate and specific.  Accordingly, the ALJ's rejection of that opinion was improper.[6]

**B.    The ALJ Failed To Develop The Record Fully And Fairly.**

In a social security case, an ALJ has a "special duty to fully and

---

[5]    As discussed further in Section B, Dr. Agler opined that he lacked an adequate basis for diagnosing Plaintiff's mental conditions and such a diagnosis would require further testing and examination.

[6]    Plaintiff's additional complaint that Dr. Agler's opinion did not constitute substantial evidence on its own is mooted by the Court's finding that Dr. Granzow's opinion was not properly rejected.

12

fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). An ALJ's duty exists regardless of whether the claimant is represented by counsel. Tonapetyan, 242 F.3d 1144, 1150 (9th Cir. 1996); *see also* Brown, 713 F.2d at 443. Furthermore, an ALJ's duty to develop the record is "heightened where the claimant may be mentally ill and thus unable to protect her own interests." Tonapetyan, 242 F.3d at 1150 (citing Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992)). An ALJ *may* "discharge" his duty in various ways, such as: "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan, 242 F.3d at 1150; *see* Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999); *see also* Smolen 80 F.3d at 1288.

Here, the ALJ failed to discharge his duty to develop the record. At the supplemental hearing, the ALJ conceded that:

> [Plaintiff] may be psychiatrically ill, but I don't know that that can be determined without further evidence. The report of Dr. Granzow is supportive of [Plaintiff's] position, but there's not really much there from which [Dr. Granzow's] conclusions can actually be drawn. I think it take[s] a leap of faith here to say that without treatment, with very little testimony, and one CE, that I can find your client psychiatrically disabled.

(A.R. 236.) Thus, by his own admission, the ALJ considered it possible

that Plaintiff is mentally ill and that the record is deficient in that respect. Accordingly, his duty to develop the record was triggered. "[A]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288).

Even though the ALJ did hold the record open for a consultative psychiatric evaluation of Plaintiff following the initial hearing, the ALJ's above-quoted statement, made at the supplemental hearing, clearly indicates his belief that this evaluation was inadequate. Furthermore, Dr. Agler, stated numerous times throughout his testimony at the supplemental hearing that he did not have enough evidence to opine properly as to Plaintiff's psychiatric impairments.[7] (A.R. 214-19.) While Dr. Agler stated that he "suspect[ed]" Plaintiff has an undifferentiated somatoform disorder, he immediately followed that statement by noting, "but I can't make the diagnosis." (A.R. 215.) Dr. Agler recommended further testings such as a projective IQ test, a brief neuro screen, a thyroid panel, CBC, and liver panel, which would

---

[7] At the supplemental hearing, Dr. Agler stated: (1) "Well, it's pretty hard to do with the evidence available. If I go on that, then I'm hard put to make any kind of diagnosis. It sounds like she could have an undifferentiated somatoform disorder, but there isn't enough evidence in the chart to put -- to establish the diagnosis by DSM-IV-TR [phonetic] criteria. Because the somatic complaint has to be proven to be baseless, which I suspect they are, but they may or may not be. But there isn't enough testing and investigation available to establish whether they are psychosomatic or physiologic basis." (A.R. 214); (2) "I suspect [Plaintiff] has an undifferentiated somatoform disorder, but I can't make the diagnosis, but then, because of that I can't make it meet the Social Security criteria for that sort of diagnosis. If you stretch a bit, you might say that she has dysthymic disorder." (A.R. 215); and (3) "I think we're missing some things." (A.R. 217)

14

significantly help in determining if Plaintiff's problems had a physiological or psychosomatic basis. (A.R. 214-19.) Significantly, if Plaintiff does, in fact, have a somatoform disorder as Dr. Agler opines, this might bear on the ALJ's finding that Plaintiff exaggerates her condition.[8]

Accordingly, the ALJ's failure to develop the record fully and fairly, especially in view of Plaintiff's possible mental illness, constitutes error.

**C.   Remand Is Required.**

For the foregoing reasons, the Court concludes that the ALJ's rejection of Dr. Granzow's opinion constitutes reversible error. Plaintiff urges the Court to credit the opinion of Dr. Granzow as "true" and award benefits. However, in view of the foregoing matters, including the issues raised by Dr. Agler, the Court cannot find that there are no outstanding issues to be resolved before a disability determination can be made, nor can the Court conclude that it is clear from the record that the ALJ would be required to find Plaintiff disabled were Dr. Granzow's opinion credited -- two of the requisites for awarding benefits at this stage. *See*, *e.g.*, Benecke v. McCarthy, 379 F.3d 587, 593 (9th Cir. 2004); Hannan v. Apfel, 211 F.3d 1172, 1178

---

[8] "People with somatization disorder are dramatic and emotional in describing their symptoms, often referring to them as 'unbearable,' 'beyond description,' or 'the worst imaginable'. . . . [A] somatoform disorder is characterized by its many symptoms and their tendency to persist over a period of years. Adding to the diagnosis are the dramatic nature of the complaints and the person's exhibitionistic, dependent, manipulative, and sometimes suicidal behavior." The Merck Manual of Diagnosis and Therapy 393 (15th ed. 1987).

(9th Cir. 2000).

Accordingly, remand is appropriate so that the defects in the record may be corrected. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989). In particular, the ALJ shall develop the record by seeking a medical opinion from an examining or consultative physician -- based on all the relevant evidence -- regarding Plaintiff's mental limitations. *See, e.g.,* 20 C.F.R. §§ 404.1517, 404.1545(a), 404.1512(b)(6)(ALJ may rely upon medical consultants and medical experts based on their review of the evidence in determining whether a claimant is disabled); *see also* 20 C.F.R. § 404.1519a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity, or insufficiency in the evidence). After further developing the record, the ALJ should reconsider Dr. Granzow's February 3, 2003 assessment and set forth specific and legitimate reasons, supported by substantial evidence in the record, as to all the limitations found by Dr. Granzow that the ALJ deems it appropriate to reject, if any.

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve

1  copies of this Memorandum Opinion and Order and the Judgment on counsel
2  for Plaintiff and for Defendant.

4  **LET JUDGMENT BE ENTERED ACCORDINGLY.**

6  DATED: July 27, 2006

                                                                /s/
                                   MARGARET A. NAGLE
                         UNITED STATES MAGISTRATE JUDGE